UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TERRY JAMES MAIER, | ) | |
| | ) | |
| Plaintiff, | ) | No.  08 C 1837 |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | Judge St. Eve |
| | ) | |
| Defendant. | ) | |

## UNITED STATES' REPLY IN SUPPORT OF SUMMARY JUDGMENT

Plaintiff Terry Maier filed a petition to quash summonses that were issued in connection with an IRS audit of his 2003 federal income taxes to four different businesses seeking financial records to help determine whether the businesses had any relationship with "Terrence Maier" and/or "Maier Precast, Inc."  The United States filed a motion for summary judgment seeking dismissal of Maier's petition because he failed to offer any valid basis to quash the summonses and, in any event, did not properly serve the United States.

In his summary judgment response, Maier denies any association with Maier Precast, alleges that the public records revealing such association are in error, and contends that someone in the district court clerk's office refused to sign his proffered summonses.  However, Maier's assertions should be disregarded because he failed to properly present them to the court or support them with admissible evidence.  Moreover, Maier's arguments, even if true, provide an insufficient justification to halt the IRS' *investigation* into his tax liability.  Accordingly, a trial is not necessary, and the United States' motion should be granted.

The United States served Maier with the required notice under Local Rule 56.2, advising him what he needed to do to properly contest summary judgment and how to properly present any contrary factual assertions to the court. Docket No. 16; *Delgado v. Board of Education of the City of Chicago*, 2008 WL 343474, *1 (N.D. Ill.)(non-moving party must respond to moving party's factual statement and designate any material facts to establish genuine dispute for trial). Despite this notice, Maier failed to submit a response to *any* of defendant's material facts and failed to properly present or support any of the factual assertions in his brief. *Greer v. Board of Education of the City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001)(plaintiff's *pro se* status does not absolve him from complying with local rules). As a result, the court should deem defendant's material facts admitted and disregard any contrary assertions in Maier's brief. *Id.* (litigant's failure to respond to statement of material facts results in admission); *McGee v. Monahan*, 2008 WL 3849917, *2 (N.D. Ill.)("The plaintiff's failure to respond to defendant's statement of material facts as directed warrants disregard of any contrary assertions he makes in his briefs."). Accordingly, summary judgment is appropriate because Maier failed to establish any basis to quash the summonses in this case or demonstrate proper service of the United States.

Additionally, even a cursory review of Maier's legal arguments reveals that they lack merit. Maier argues that the Westlaw record of UCC1's filed with the Illinois Secretary of State is incorrect because ownership of the Community Bank of Plano has changed hands several times. However, this argument, even if true, does not assist Maier. First, it fails to prove a lack of association between Maier and Maier Precast. Second, it fails to prove that the referenced debt was never owed to the Community Bank of Plano or that it is not still owed to the ultimate purchaser of that bank. Accordingly, Maier's argument does not advance his claim that the IRS's issuance of the summonses

was an abuse of process. *2121 Arlington Heights Corp. v. IRS*, 109 F.3d 1221, 1224 (7th Cir. 1997). Moreover, despite Maier's contrary argument, the IRS does not have to demonstrate that Maier is *actually* associated with Maier Precast or the summonsed businesses. The IRS is allowed to *investigate*. As the Supreme Court has explained, the IRS can investigate "merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *United States v. Powell*, 379 U.S. 48, 57 (1964).

Maier's argument concerning his failure to properly serve the United States is equally unavailing. While Maier contends that someone in the district court clerk's office refused to sign his proffered summonses, his argument reveals that the summonses that he tendered to the clerk did not contain a case number or assigned judge. As such, even if the clerk did refuse to sign the summonses, it would seem that such refusal was appropriate. Moreover, Maier does not even allege that he made a second attempt to get the summonses signed after he obtained a case number and the name of the assigned judge. Accordingly, there is no factual *or* logical basis to excuse Maier's failure to properly obtain summonses and serve the United States.

**Conclusion**

For the foregoing reasons, the court should grant summary judgment in favor of the United States and dismiss Maier's petition.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By: s/ Samuel D. Brooks
    SAMUEL D. BROOKS
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 353-5342
    sam.brooks@usdoj.gov

4

## <u>CERTIFICATE OF SERVICE</u>

The undersigned Assistant United States Attorney hereby certifies that the following documents:

United States Motion Reply in Support of Summary Judgment

was served on September 2, 2008, in accordance with FED. R. CIV. P. 5, LR5.5, and the General Order on Electronic Case Filing pursuant to the district court's Electronic Case Filing (ECF) system as to ECF filers, if any, and was sent by first-class mail to the following non-ECF filers:

Terry J. & Denise L. Maier
14780 Galena Road
Plano, Illinois 60545

By:     s/ Samuel D. Brooks
        SAMUEL D. BROOKS
        Assistant United States Attorney
        219 South Dearborn Street
        Chicago, Illinois 60604
        (312) 353-5342
        sam.brooks@usdoj.gov

5

**Westlaw Delivery Summary Report for BROOKS,SAM 1088244**

| | |
|---|---|
| Your Search: | LOCAL +2 RULE /S 56.2 /S NOTICE and Ju(st eve) |
| Date/Time of Request: | Thursday, August 28, 2008 11:03 Central |
| Client Identifier: | SDB |
| Database: | FED7-ALL |
| Citation Text: | Slip Copy |
| Lines: | 390 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

**C**

Delgado v. Board of Educ. of City of Chicago
N.D.Ill.,2008.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern
Division.
Refugio DELGADO, Plaintiff,
v.
BOARD OF EDUCATION OF the CITY OF
CHICAGO, Defendant.
**No. 07 C 1331.**

Feb. 7, 2008.

Refugio Delgado, Chicago, IL, pro se.
Susan Margaret O'Keefe, Chicago Board of Education, Law Department, Chicago, IL, for Defendant.

*MEMORANDUM OPINION AND ORDER*

AMY J. **ST**. **EVE**, District Judge.
**\*1** Pro se Plaintiff Refugio Delgado brought a four-count Complaint against his present employer Defendant Board of Education of the City of Chicago (the "Board") alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq., as well as age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., and reverse gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.[FN1] Delgado bases his claims on the Board's failure to re-hire or transfer him to Arnold Mireles Elementary Academy. Before the Court is Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the Court grants Defendant's motion.

> FN1. In his Complaint, Delgado also made a passing reference to his due process rights, yet did not bring a claim under 42 U.S.C. § 1983. *See Halfhill v. Northeast Sch. Corp.,* 472 F.3d 496, 500 (7th

Cir.2006). Further, Delgado makes no arguments in support of a due process claim in his summary judgment filings. *See Steen v. Myers,* 486 F.3d 1017, 1020 (7th Cir.2007) (absence of discussion in briefs amounts to abandonment of claim). Therefore, the Court will not consider any such claim.

*BACKGROUND*

**I. Northern District of Illinois Local Rule 56.1 Statements**

Because Delgado is a pro se litigant, the Board served him with a " **Notice** to Pro Se Litigant Opposing Motion for Summary Judgment" as required by Northern District of Illinois **Local Rule 56**. **2**. The notice explains the consequences of failing to properly respond to a motion for summary judgment and statement of material facts under Federal Rule of Civil Procedure 56(e) and Local Rule 56.1.

When determining summary judgment motions, the Court derives the background facts from the parties' Local Rule 56.1 statements. Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence."*Bordelon v. Chicago Sch. Reform Bd. of Trs.,* 233 F.3d 524, 527 (7th Cir.2000). Specifically, Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue."*Ammons v. Aramark Uniform Servs., Inc.,* 368 F.3d 809, 817 (7th Cir.2004). Local Rule 56.1(b)(3) requires the nonmoving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.,* 403 F.3d 940, 944 (7th Cir.2005). The parties' statements must contain short numbered paragraphs in-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

cluding references to the affidavits, parts of the record, and other supporting materials. *See id.; see also Ammons,* 368 F.3d at 817.

The purpose of Rule 56.1 statements is to identify the relevant evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir.2006). The types of evidentiary material available to support Local Rule 56.1 statements are numerous, but the most common materials include affidavits, deposition transcripts, and business documents. *Malec v. Sanford,* 191 F.R.D. 581, 584 (N.D.Ill.2000). In addition, "hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial."*Eisenstadt v. Centel Corp.,* 113 F.3d 738, 742 (7th Cir.1997); *see, e.g., Keri v. Board of Tr. of Purdue Univ.,* 458 F.3d 620, 630 (7th Cir.2006).

**\*2** A litigant's failure to respond to a Local Rule 56.1 statement results in the Court admitting the uncontroverted statement as true. *Raymond v. Ameritech Corp.,* 442 F.3d 600, 608 (7th Cir.2006). The Court may disregard statements and responses that do not properly cite to the record. *See Cichon v. Exelon Generation Co., L.L.C.* 401 F.3d 803, 809-10 (7th Cir.2005); *Brasic v. Heinemann's Inc.,* 121 F.3d 281, 284 (7th Cir.1997). The requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted."*Bordelon,* 233 F.3d at 528.

Although courts must construe pro se pleadings liberally, *see Kaba v. Stepp,* 458 F.3d 678, 681 (7th Cir.2006), a plaintiff's pro se status does not absolve him from complying with these Local Rules. *See Greer v. Board of Ed. of City of Chicago,* 267 F.3d 723, 727 (7th Cir.2001); *see also McNeil v. United States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.") With these standards in mind, the Court turns to the relevant facts of this case.

## II. Relevant Facts

Plaintiff Refugio Delgado presently works for the Board as a substitute teacher. (R. 21-1, Def.'s Rule 56.1 Stmt. Facts ¶ 2.) Delgado is licensed to teach Elementary School grades K-9 and has an endorsement in Social Science for Middle School grades. (R. 39-1, Pls.' Resp. Stmt. Facts ¶ 2.) Delgado was born on October 3, 1965, and filed the relevant EEOC Charge of Discrimination in this matter on April 27, 2006.[FN2](Def.'s Stmt. Facts ¶ 3.) The EEOC issued Delgado's Notice of Right to Sue letter on December 6, 2006. (R. 1-1, Compl.¶ 8(b).)

> FN2. Any acts occurring more than 300 days prior to Delgado's filing of this EEOC charge, namely, July 1, 2005, are time-barred. *See Ledbetter v. Goodyear Tire & Rubber, Co.,* --- U.S. ----, 127 S.Ct. 2162, 2165, 167 L.Ed.2d 982 (2007); *Brown v. Illinois Dept. of Nat. Res.,* 499 F.3d 675, 695 (7th Cir.2007). The acts include the Board's non-renewal of Delgado's teaching appointment to Gillespie Elementary School pursuant to Arne Duncan's May 13, 2005, letter.

Principal Slater was the principal at Gillespie Elementary School during the relevant time period. (*Id.* ¶ 5.) During the 2004-05 school year, Principal Slater recommended that the Board hire Delgado as a teacher for Gillespie Elementary School for a one-year term. (*Id.* ¶ 6.) Delgado, who is not a tenured teacher, taught at Gillespie Elementary School for one year. (*Id.* ¶¶ 4, 45.)In fact, the record reveals that Delgado was a probationary teacher at Gillespie Elementary School. (*Id.* ¶ 1; Pl.'s Resp. Stmt. Facts, Ex. 22A.) Meanwhile, during the 2004-05 school year, Principal Slater recommended to the Department of Human Resources not to renew Delgado's appointment as a probationary teacher at Gillespie Elementary School for the 2005-06 school year. (*Id.* ¶ 7.) Thereafter, the Chief

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Executive Officer of the Chicago Board of Education, Arne Duncan, sent a letter to Delgado dated May 13, 2005, informing him that the Board was not renewing his appointment to teach at Gillespie Elementary School for the 2005-06 school year. (*Id.* ¶ 10.)

Prior to working at Gillespie Elementary School, Delgado taught at Arnold Mireles Elementary Academy (formerly called Phil Sheridan School), which is also a Chicago Public School. (Pls.' Resp. Stmt. Facts ¶ 1.) During his time at Gillespie Elementary School, Delgado wanted to be transferred back to Arnold Mireles Elementary Academy. (*Id.* ¶¶ 8, 34; Def.'s Stmt. Facts ¶ 33.) Principal Slater, however, never received a transfer form from Delgado. (Def.'s Stmt. Facts ¶ 34.) In addition, the Department of Human Resources does not have a record of Delgado's transfer request. (*Id.* ¶ 51.)Nevertheless, Delgado contends that he informed the Board of his intent to transfer on or about February 23, 2005. (Pls.' Resp. Stmt. Facts ¶ 34.) The Board never transferred Delgado to Arnold Mireles Elementary Academy.

### *SUMMARY JUDGMENT STANDARD*

**\*3** Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."*Fed. R. Civ. P 56(c).* A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."*Scott v. Harris,* --- U.S. ----, ----, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact.*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.' "*Anderson v. Liberty Lobby,* 477 U.S. at 255 (quoting *Fed. R. Civ. P. 56(e)*). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott,* 127 S.Ct. at 1776.

### *ANALYSIS*

### I. Disability Discrimination Claim

First, Delgado argues that the Board did not transfer or re-hire him to Arnold Mireles Elementary Academy based on his disability. "The Americans with Disabilities Act ("ADA") prohibits discrimination against 'a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'"*Williams v. Excel Foundry & Mach., Inc.,* 489 F.3d 309, 310 (7th Cir.2007) (quoting *42 U.S.C. § 12112(a)*). To establish a prima facie case of disability discrimination, Delgado must present evidence that: (1) he is disabled within the meaning of the ADA; (2) he was meeting the Board's legitimate job expectations; (3) he suffered an adverse employment action; and (4) the Board treated similarly situated employees outside of his protected class more favorably than they treated him.*Kampmier v. Emeritus Corp.,* 472 F.3d 930, 937 (7th Cir.2007).

The Court first turns to the threshold question of whether Delgado is disabled under the ADA because it is dispositive. To show that he is disabled within the meaning of the ADA, Delgado must

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

present evidence that: (1) he has a physical or men-tal impairment that substantially limits one or more major life activities; (2) there is a record of such an impairment; or (3) the Board regards him as having an impairment that substantially limits one or more major life activities. *See id.*(citing 42 U.S.C. § 12102(2)(A)-(C)). Delgado makes no arguments under this standard, but claims that he has two physical impairments-an eye injury and a sensitivity to noise. The Court thus turns to whether these impairments substantially limit a major life activity.

**\*4** The focal point of the Court's inquiry involves the term "major life activities," which includes activities that "are of central importance to daily life," such as "walking, seeing, and hearing." *Cassimy v. Board of Educ. of Rockford Pub. Sch. Dist.,* 461 F.3d 932, 936 (7th Cir.2006) (quoting *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 197, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002)). To qualify as disabled under the ADA, a plaintiff must also show that the limitation on the "major life activity" is "substantial." *Toyota Motor Mfg.,* 534 U.S. at 195 (citing 42 U.S.C. § 12102(2)(A)). "Substantially limits" means that the plaintiff "is unable to perform a major life activity that the average person in the general population can perform or is significantly restricted as to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."*Kammpier,* 472 F.3d at 937;*see also*29 C.F.R. § 1630.2(j)(1)(i)-(ii). As the Seventh Circuit instructs, "[n]ot every medical affliction amounts to, or gives rise to, a substantial limitation on a major life activity."*Cassimy,* 461 F.3d at 936.

Here, Delgado fails to make any arguments as to how his eye injury and hearing impairment rise to the level of "disability" as defined by the ADA. In fact, he admits that he "had a temporary disability to my eye when I was injured on April 18, 2000."(Pl.'s Resp. Stmt. Facts ¶ 11.) Delgado also asserts that he had conjunctivitis in 2000. (*See id.,* Ex. 11A.) Under the ADA, however, Delgado must establish that his eye injury limited a major life

activity on a permanent and long-term basis, which he has failed to do based on his admission and the lack of evidence in the record supporting his claim. *See Toyota Motor Mfg.,* 534 U.S. at 195;*Anders v. Waste Mgmt. of Wis.,* 463 F.3d 670, 677 (7th Cir.2006).

Meanwhile, Delgado argues that he has a chronic hearing condition when he is exposed to loud or re-peated noises above the normal decibel range. (Pl.'s Resp. Stmt. Facts ¶ 12.) The only evidence Delgado has set forth supporting this claim is an Advocate Trinity Health Partners Referral Form dated May 22, 1998, stating that he "feels [his] hearing is hy-persensitive at certain levels" and a doctor's note that he had a nominal ear infection on October 8, 2007. (*Id.,* Ex. 12A, 14D.) This evidence does not substantiate Delgado's claim that his hearing prob-lems prevent or severely restrict his ability to hear. *See Burks v. Wisconsin Dept. of Transp.,* 464 F.3d 744, 758 (7th Cir.2006). As such, there is no mater-ial issue of material fact whether Delgado was sub-stantially limited in his ability to hear. *See id.*Be-cause Delgado has failed to set forth sufficient evidence that he is disabled within the meaning of the ADA, the Court grants Defendant's summary judgment motion as to Delgado's disability claim.FN3

> FN3. On his "Complaint of Employment Discrimination" Form, Delgado also checked the box that the Board failed to reasonably accommodate his disabilities. (*See* Compl. ¶ 12(c).) Because Delgado has failed to present sufficient evidence that he is "disabled" as defined by the ADA, his reasonable accommodation claim also fails. *See EEOC v. Sears, Roebuck & Co.,* 417 F.3d 789, 797 (7th Cir.2005).

## II. Age & Reverse Gender Discrimination Claims

**\*5** Next, Delgado argues that the Board did not transfer or re-hire him to Arnold Mireles Element-ary Academy based on his age and gender. Under

the ADEA and Title VII, Delgado may prove intentional discrimination by using either the direct or indirect method of proof as set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).*See Ptasznik v. St. Joseph Hosp.,* 464 F.3d 691, 695 (7th Cir.2006); *Gore v. Indiana Univ.,* 416 F.3d 590, 592 (7th Cir.2005). Because Delgado fails to present direct evidence of intentional discrimination, the Court reviews his claims under the *McDonnell-Douglas* indirect method of proof.

To establish a prima facie case of age discrimination, Delgado must show that (1) he is a member of a protected class, (2) his job performance met the Board's legitimate expectations, (3) the Board subjected him to an adverse employment action, and (4) the Board treated similarly situated employees outside of his protected class more favorably. *See McDonnell Douglas,* 411 U.S. at 802;*Barricks v. Eli Lilly & Co.,* 481 F.3d 556, 559 (7th Cir.2007). Under his reverse-discrimination claim, Delgado must show the second, third, and fourth prima facie elements above, as well as "background circumstances" that the Board had a reason to discriminate against men or that the circumstances are "fishy." *See Henry v. Jones,* 507 F.3d 558, 564 (7th Cir.2007).

The Court turns to the fourth prima facie element of Delgado's age and reverse gender discrimination claims-whether the Board treated similarly situated individuals who were female or under 40 years old better than they treated him-because it is dispositive.[FN4] To determine whether employees are similarly situated, the Court's inquiry is a flexible one that considers "all relevant factors, the number of which depends on the context of the case."*Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 405 (7th Cir.2007) (quoting *Radue v. Kimberly-Clark Corp.,* 219 F.3d 612, 617 (7th Cir.2000))."An employee is similarly situated to a plaintiff if the two employees deal with the same supervisor, are subject to the same standards, and have engaged in similar conduct without such dif-

ferentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them."*Fane v. Locke Reynolds, LLP,* 480 F.3d 534, 538 (7th Cir.2007); *see also Radue,* 219 F.3d at 617-18. As the Seventh Circuit instructs "the purpose of the similarly situated requirement is to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable: complaints about discrimination."*Humphries,* 474 F.3d at 405. In other words, the purpose of the similarly situated test "is to determine whether there are enough common factors between a plaintiff and a comparator-few enough confounding ones-to allow for a meaningful comparison in order to divine whether discrimination was at play."*Barricks v. Eli Lilly & Co.,* 481 F.3d 556, 560 (7th Cir.2007).

> FN4. The Court notes that Delgado did not turn 40 years old until October 3, 2005, which is over four months after Arne Duncan's May 13, 2005, letter informing Delgado that he would not be reappointed to Gillespie Elementary School.

**\*6** Delgado has failed to identify similarly situated teachers who were younger or female so the Court can make a meaningful comparison to discern if unlawful discrimination was at play. *See id.; see also Radue,* 219 F.3d at 619 (similarly situated element requires plaintiff to demonstrate shared "common features essential to a meaningful comparison"). In fact, Delgado fails to set forth his own affidavit averring that the Board hired individuals at Arnold Mireles Elementary Academy who are not in his protected classes. Because Delgado has made no attempt to point to any younger or female employees who are similarly situated and received more favorable treatment, Delgado's age and reverse gender discrimination claims fail. *See Barricks,* 481 F.3d at 560.

Finally, although the rights under Title VII apply to men and whites-as well as members of various minority groups and women, *see Mlynczak v. Bod-*

*man,* 442 F.3d 1050, 1057 (7th Cir.2006), the Seventh Circuit has cautioned that

> the conventional *McDonnell Douglas* framework is not very helpful for so-called reverse-discrimination claims. Because it is the unusual employer who discriminates against majority employees, a male plaintiff alleging gender discrimination must show something more than the fact that he is gendered.... Rather, the plaintiff in such cases must show background circumstances that demonstrate that a particular employer has reason or inclination to discriminate invidiously against whites [or men] or evidence that there is something "fishy" about the facts at hand.

*Gore v. Indiana Univ.,* 416 F.3d 590, 592 (7th Cir.2005) (internal quotations and citations omitted). Again, Delgado fails to argue or present evidence that the Board has a reason or inclination to discriminate against men or that there is something "fishy" about his circumstances. *See id.* Accordingly, the Court grants Defendant's summary judgment motion as to Delgado's age and reverse gender discrimination claims.

**III. Retaliation Claim**

Delgado brings his Title VII retaliation claim based on his earlier lawsuits against the Board-pursuant to the Family and Medical Leave Act and Title VII-that the parties settled. (*See* 02 C 7886; 03 C 0575). In addition, Delgado bases his retaliation claim on complaints he filed with the Occupational Safety and Health Administration ("OSHA") concerning safety conditions at both Gillespie Elementary School and Arnold Mireles Elementary Academy. (Def.'s Stmt. Facts ¶ 36, Pl.'s Stmt. Facts ¶ 36.)

Under Title VII, it is unlawful for an "employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."42 U.S.C. § 2000e-3(a). Title VII's "anti-retaliation provision seeks to secure th[e] primary objective [of] preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees."*Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 126 S.Ct. 2405, 2412, 165 L.Ed.2d 345 (2006)."Like other Title VII claims, retaliation claims may be approached under either a direct or an indirect method of proof."*Bernier v. Morningstar, Inc.,* 495 F.3d 369, 375 (7th Cir.2007).

**\*7** Because Delgado does not argue or establish a causal connection between his former lawsuits, EEOC charges, and OSHA complaints and any adverse action taken by the Board under the direct method, *see Burks,* 464 F.3d at 758, the Court turns to the indirect method of proving a retaliation claim. Under the indirect method, Delgado must establish a prima facie case of retaliation by offering evidence that: (1) he engaged in protected activity; (2) he suffered an adverse action; (3) he met the Board's legitimate job expectations; and (4) the Board treated him less favorably than similarly situated employees who did not engage in the protected activity. *See id.* at 759;*see also Brewer v. Board of Tr. of Univ. of Ill.,* 479 F.3d 908, 923 (7th Cir.2007).

There is no doubt that filing lawsuits and EEOC charges are protected activities under the first element of a retaliation claim. *See Tomanovich v. City of Indianapolis,* 457 F.3d 656, 663 (7th Cir.2006). What is missing from Delgado's case, however, is any evidence that the Board treated similarly situated employees who did not engage in protected activities more favorably than Delgado. Although Delgado has proceeded in this lawsuit pro se, he must still set forth evidence and make arguments on his behalf. *See Greer v. Board of Educ. of City of Chicago,* 267 F.3d 723, 727 (7th Cir.2001); *see also Pliler v. Ford,* 542 U.S. 225, 124 S.Ct. 2441, 2446, 159 L.Ed.2d 338 (2004) ( "District judges

have no obligation to act as counsel or paralegal to pro se litigants."). Because he has failed to do so, the Court grants Defendant's summary judgment motion as to Delgado's retaliation claim.

### *CONCLUSION*

For the foregoing reasons, the Court grants the Defendant's Motion for Summary Judgment.

N.D.Ill.,2008.

Delgado v. Board of Educ. of City of Chicago

Slip Copy, 2008 WL 343474 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**Westlaw Delivery Summary Report for BROOKS,SAM 1088244**

| | |
|---|---|
| Your Search: | local +2 rule /s 56.2 /s notice |
| Date/Time of Request: | Thursday, August 28, 2008 10:56 Central |
| Client Identifier: | SDB |
| Database: | FED7-ALL |
| Citation Text: | Slip Copy |
| Lines: | 775 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

Slip Copy                                                                                                          Page 1
Slip Copy, 2008 WL 3849917 (N.D.Ill.)

McGee v. Monahan
N.D.Ill.,2008.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern
Division.
Juan McGEE, Plaintiff,
v.
Thomas MONAHAN, et al., Defendants.
**No. 06 C 3538.**

Aug. 14, 2008.

Juan McGee, Rushville, IL, pro se.
Kathleen Louise Ford, Illinois Attorney General's
Office, Jack T. Riley, Brian Patrick Gainer, Eydie
Rachel Glassman, Johnson & Bell, Ltd., Edward H.
Nielsen, Marcie L. Hefler, Pretzel & Stouffer,
Chtd., James Constantine Vlahakis, Hinshaw &
Culbertson, Chicago, IL, for Defendants.

### *MEMORANDUM OPINION AND ORDER*

JAMES B. ZAGEL, District Judge.
**\*1** The plaintiff, a civil detainee in the custody of
the Illinois Department of Human Services, has
brought this *pro se* civil rights action pursuant to 42
U.S.C. § 1983. The plaintiff challenges the condi-
tions of his confinement at the Joliet Treatment and
Detention Facility, where he was held prior to being
transferred to the new installation in Rushville,
Illinois. By Memorandum Opinion and Order of
September 14, 2007, the court dismissed certain
claims pursuant to Fed.R.Civ.P. 12(b)(6). This mat-
ter is before the court for ruling on the various de-
fendants' motions for summary judgment as to the
plaintiff's remaining claims. For the reasons stated
in this order, the motions are granted.

## I. STANDARD OF REVIEW ON A MOTION
## FOR SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if

the pleadings, depositions, answers to interrogator-
ies, and admissions on file, together with affidavits,
if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to
a judgment as a matter of law."Fed.R.Civ.P. 56(c);
*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106
S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Vision Church
v. Village of Long Grove,* 468 F.3d 975, 988 (7th
Cir.2006). In determining whether factual issues
exist, the court must view all the evidence and draw
all reasonable inferences in the light most favorable
to the non-moving party. *Walker v. Northeast Re-
gional Commuter Railroad Corp.,* 225 F.3d 895,
897 (7th Cir.2000).

However, Rule 56(c)"mandates the entry of sum-
mary judgment, after adequate time for discovery
and upon motion, against a party who fails to make
a showing sufficient to establish the existence of an
element essential to that party's case, and on which
that party will bear the burden of proof at
trial."*Celotex,* 477 U.S. at 322. "Where the record
taken as a whole could not lead a rational trier of
fact to find for the non-moving party, there is no
genuine issue for trial."*Sarver v. Experian Informa-
tion Solutions,* 390 F.3d 969, 970 (7th Cir.2004)
(citations omitted).

## II. FACTS

The plaintiff is a pretrial detainee, in the custody of
the Illinois Department of Human Services while he
faces civil commitment pursuant to the Illinois
Sexually Violent Persons Commitment Act, 725
ILCS § 207/1, *et seq.* At all times relevant to this
action, the plaintiff was housed at the Joliet Treat-
ment and Detention Facility (hereinafter, "TDF").

Plaintiff sues seven employees and contractors of
the Illinois Department of Human Services
[hereinafter, "DHS"]. The defendants are: (1) Joliet
TDF Facility Director Thomas Monahan; (2) Hos-
pital Administrator Carol Vance; (3) resident physi-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

cian Jovita Anyanwu; (4) nurse Alice Coleman; (5) Addus Health Care, Incorporated; (6) Aramark Correctional Services; and (7) Liberty Healthcare Corporation.

Together with their summary judgment motions, the defendants served on the plaintiff the required **notice** under **Local Rule 56**. **2** (N .D. Ill.), advising the plaintiff what he needed to do to contest the motions, and specifically what he needed to do to dispute the defendants' respective statements of uncontested facts. (*See* Notice to Pro Se Litigant Opposing Motion for Summary Judgment, document nos. 87, 112, 114.)Despite this, the plaintiff has not submitted a statement of contested facts with citations to the record; instead, he simply elaborates on or equivocates about certain facts in his opposing brief, without referencing any supporting documentation. But unsupported statements in a brief are not evidence and cannot be given any weight. *See, e.g., Johnson v. Spiegel, Inc.,* No. 02 C 0680, 2002 WL 1880137, at *4 (N.D.Ill. Aug.15, 2002) (Pallmeyer, J.), *citing In the Matter of Morris Paint and Varnish Co.,* 773 F.2d 130, 134 (7th Cir.1985).

**\*2** The plaintiff's failure to respond to the defendants' statements of material facts as directed warrants disregard of any contrary assertions he makes in his briefs. *See Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir.2003):

> Local Rule 56.1's enforcement provision provides that when a responding party's statement fails to controvert the facts as set forth in the moving party's statement in the manner dictated by the rule, those facts shall be deemed admitted for purposes of the motion.... We have consistently held that a failure to respond by the nonmovant as man by the local rules results in an admission. *See, e.g., Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 689 (7th Cir.2000). A district court is not required to "wade through improper denials and legal argument in search of a genuinely disputed fact."*Bordelon v. Chicago School Reform Bd. of Trustees,* 233 F.3d 524, 529 (7th Cir.2000). And a mere disagreement with the

movant's asserted facts is inadequate if made without reference to specific supporting material. *Edward E. Gillen Co. v. City of Lake Forest,* 3 F.3d 192, 196 (7th Cir.1993).

The court need not "scour the record to make the case of a party who does nothing."*Greer v. Mc-Curry,* No. 02 C 4326, 2003 WL 21826549, *6 (N.D.Ill. Aug.5, 2003) (Zagel, J.)., *quoting Johnson v. Gudmundsson,* 35 F.3d 1104, 1116, n. 9 (7th Cir.1994); *see also Tatalovich v. City of Superior,* 904 F.2d 1135, 1139 (7th Cir.1989) (the court is not required to comb the record for evidence contradicting the moving party's statements in support of its motion for summary judgment."Rule 56 demands something more than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted."*McMillian v. Svetanoff,* 878 F.2d 186, 190 (7th Cir.1989.)"Summary judgment is the 'put up or shut up' moment in a lawsuit. Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial."*Harney v. Speedway SuperAmerica, LLC,* 526 F.3d 1099, 1104 (7th Cir.2008) (citations omitted).

The following facts are therefore undisputed for purposes of the defendants' motions for summary judgment:

On October 21, 2005, the date of the plaintiff's mandatory release from prison, he was taken to the Joliet TDF rather than being released outright. (Complaint, p. 6.) The plaintiff was informed that he was being detained as a "sexually violent person" pursuant to 725 ILCS § 207/1. *Id.* Under that statute, a sexually violent person is someone who has been convicted of a sexually violent offense (or has been found not guilty of a sexually violent offense by reason of insanity) and "who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

will engage in acts of sexual violence." 725 ILCS § 207/5(f). The plaintiff was held at the Joliet TDF from October 21, 2005, until August 19, 2006, when he was transferred along with all other detainees to the DHS's new facility in Rushville, Illinois. (Complaint, pp. 6-7; Liberty's Exhibit B, Deposition of Juan McGee, p. 6.)

**\*3** The plaintiff lived in a newer housing unit for the first two months of his stay at the Joliet TDF. (Complaint, pp. 6-7; Plaintiff's Depo., p. 7.) The plaintiff understood that the new housing unit was limited to residents who participated in sex offender treatment. (*Ibid.*) The plaintiff also understood that he would have been permitted to remain in the new housing unit if he had consented to sex offender treatment. (*Ibid.*) However, because the plaintiff refused to consent to sex offender treatment, he was placed in an older building. (*Ibid.*)

*Facts Relating to Liberty Healthcare Corporation*

The Illinois Department of Human Services, and not Liberty Healthcare Corporation, operated the Joliet TDF. (725 ILCS 207/50; Liberty's Exhibit C, Declaration of Shan Jumper, ¶ 4. Shan Jumper, an employee of Liberty Healthcare and the TDF's Associate Clinical Director (later, Director), did not have any responsibilities with regard to the maintenance or operation of the Joliet TDF's physical plant, pest abatement, water supplies, and/or the facility's heating and cooling systems. (Jumper Affidavit, ¶¶ 6-7.) FN1

> FN1. In his response to Liberty's motion for summary judgment, the plaintiff disputes this and many other assertions made by Jumper. However, the plaintiff bases most of his objections solely on a professed "lack of knowledge." Because the plaintiff has come forth with no evidence to refute Jumper's representations, made under oath, the court deems them uncontested. *See also, United States v. Stevens, 500 F.3d 625, 628-29 (7th Cir.2007)*

(arguments in a brief that are unsupported by documentary evidence are not evidence).

Liberty and its employees (psychologists and therapists) provide sex offender treatment to individuals who consent to receive sex offender treatment under the SVP Act. (*Id.,* ¶ 2.) In his role as Clinical Director, Jumper has and had no power to direct DHS staff how to maintain the physical plant. (*Id.,* ¶ 8.) Jumper did not and does not contract with outside vendors in connection with plant maintenance. (*Id.,* ¶¶ 9, 10.)

Jumper's common practice and custom is to refer any written resident complaints to the resident's assigned primary therapist. (*Id.,* ¶ 11.)Jumper undertook this practice as he found it was impossible for him to personally respond to or follow up with every resident complaint he received. (*Id.*)

Dr. Jumper has no independent recollection of whether the plaintiff ever wrote to him to complain about his housing conditions. (*Id.,* ¶ 20.)If the plaintiff did write to Jumper, Jumper most likely would have skimmed the letter and then forwarded it to the plaintiff's primary therapist for follow-up.(*Id.,* ¶ 22.)Jumper would have likewise forwarded a request for a face-to-face meeting to the plaintiff's primary therapist. (*Id.*)

The Joliet TDF has and had administrative grievance procedures in place.(*Id.,* ¶ 21;*see also*59 Ill. Admin. Code § 299.820 .) Grievances are initially reviewed by a grievance examiner, who investigates the grievance and makes a recommendation. (Jumper Affidavit, ¶ 21.). The TDF's facility director, and not its clinical director, generally renders the final decision. (*Id.*) Jumper has no role in the grievance process unless he is called upon to give an opinion about a particular matter. (*Id.*)

Jumper never observed housing conditions to be less than well maintained, sanitary, and otherwise hospitable. (*Id.,* ¶ 23.)Housing units were sprayed at least twice a month by outside contractors. (*Id.;*

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Plaintiff's Depo., pp. 38-40.) The maintenance staff regularly made repairs in resident living quarters. (Jumper Affidavit, ¶ 23.)

**\*4** The maintenance staff routinely took temperature readings for quality control purposes. (*Id.,* ¶ 23.)The maintenance staff brought large air circulation fans into the housing units during the summer months and the staff provided residents with additional blankets during the winter months. (*Id.;* Plaintiff's Depo., pp. 30-31.) Although the older housing units at the Joliet TDF did not have central air, cooler air was circulated through the day rooms by large, built-in, overhead circulation units. (Jumper Affidavit, ¶ 23.)

The plaintiff was placed on "closed management status" (which the court gathers means unit restriction) for three, 30-day periods as a result of committing three consecutive rule violations. (Plaintiff's Depo., pp. 53, 77-78.) When the plaintiff was on unit restriction, he could not leave his living unit, but he had access to the day room. (*Id.,* p. 53.)

Normally, even residents on closed management status due to rule violations were permitted outdoor exercise. (*Id.*) However, the plaintiff contends that he was not allowed to exercise outside of his room for ninety days. (*Id.,* p. 75.)The plaintiff chose not to exercise in his room because he thought the ventilation was inadequate. (*Id.,* p. 51.)The plaintiff did not suffer any physical injuries as a result of not exercising outside for ninety days. (Exhibit B to Defendant Monahan's Motion for Summary Judgment, Depo. of Juan McGee, p. 76.)

Neither Jumper nor any Liberty employee ever revoked the plaintiff's exercise privileges, and Jumper was not aware of any exercise restriction ever being imposed upon the plaintiff. (*Id.,* ¶¶ 29, 30.)The Behavior Management Committee did not issue restrictions on resident exercise when a resident was found to have violated a facility rule or order. (*Id.,* ¶ 30.)If a resident were ever denied exercise for security reasons, that decision would have been made by the TDF's Security Director or Facility

Director, DHS employees.(*Id.*)

With regard to each conduct report, the plaintiff was afforded a hearing before the Behavior Committee to give his account of what happened. (*Id.,* p. 55.)The plaintiff received a verbal warning for one rule violation (*id.,* p. 57); for a second rule violation, the Behavior Committee recommended that he join an anger management therapy group. (*Id.,* pp. 58-59.)On a third occasion, the plaintiff was restricted to his housing unit for seven days for failing to wear his yellow jumpsuit. (*Id.,* pp. 59, 62.)[FN2]

> [FN2]. The court cannot find any record of a ninety-day (or three, thirty-day) unit restrictions. However, the court will assume for purposes of the defendants' motions for summary judgment that the plaintiff did go ninety days without being allowed any outdoor recreation.

In the fall of 2004 (before the plaintiff arrived at the Joliet TDF), an expert hired by the American Civil Liberties Union tested the Joliet TDF for health, sanitation, pest, and temperature-related issues in connection with a class action before Judge Harry D. Leinenweber of this court. (*Id.,* ¶¶ 25-26.)Although the expert did not issue a formal report, it was Jumper's understanding that the expert found no major faults with the physical conditions at the Joliet TDF. (*Id.*). The fact that Judge Leinenweber and the ACLU expert toured the facility without Jumper learning of any serious concerns further supported Jumper's belief that housing conditions at the TDF were reasonable and adequate. (*Id.*)

**\*5** The plaintiff never submitted any written complaints to Liberty Healthcare about the conditions of his confinement. (*Id.,* pp. 29-33, 78.).

*Facts relating to Aramark Correctional Services*

Aramark has a contract with the State of Illinois to provide food service to Illinois Department of Human Services detention facilities. (Complaint, Ex-

hibit A.)

Within twenty-four days of his arrival at the Joliet TDF, the plaintiff suffered a severe stomach ailment. (Defendant's Depo., pp. 150-51.) The plaintiff believes his illness may have been caused by a nurse not wearing gloves when she gave him an insulin injection, by food poisoning, or by the "contaminated" water. (*Id.,* p. 179.)The plaintiff made four requests for medical attention during his confinement at the Joliet TDF. (*Id.,* p. 174 .)Three of those requests (dated November 16, 18 and 20, 2005) related to the stomach ailment. (*Id.,* pp. 177-78.)[The parties have not disclosed the nature of the fourth request for medical attention.] During the ten-day period that the plaintiff suffered the stomach ailment, he threw up blood, had bad headaches, and was afflicted by diarrhea.

Every day, a resident dispensed breakfast from a plastic bag in the day room.(*Id.,* p. 180.)The food was invariably cold. (*Id..* ) Aramark employees would serve the food when the residents were on "lockdown." (*Id.,* p. 179.)The cookies, bread and cereal were often stale. (*Id.,* p. 182.)On more than one occasion, the plaintiff received spoiled chicken and undercooked eggs. (*Id.,* p. 183.)

The plaintiff was once placed on lockdown for verbally complaining to an unknown Aramark employee about the food. (*Id.,* p. 181.)The plaintiff never made a written complaint about the food. (*Id.,* pp. 181-82.)Nor did the plaintiff ever file a grievance regarding the food quality. (*Id.*) The plaintiff did file a grievance dated November 3, 2005, about a missed breakfast.

The plaintiff suffers from diabetes. (*Id.,* p. 51.)The plaintiff does not believe he was served diabetic breakfasts. (*Id .,* p. 184.)However, from the point that he was transferred to the old unit at Joliet TDF until the filing of the complaint, the plaintiff suffered no illnesses other than the stomach ailment that troubled him shortly after his arrival at the facility.

*Facts Relating to the "Health Care Defendants"*

As discussed *supra,* the plaintiff suffered from a severe stomach ailment in November 2005. Health care providers gave the plaintiff Maalox to treat his symptoms and Tylenol 3 with codeine[FN3] to treat his pain. (Health Care Defendants' Exhibit A, Deposition of Juan McGee, pp. 152-153.)

> FN3. In response to the defendants' motion for summary judgment, the plaintiff now asserts that Nurse Coleman contravened the doctor's orders and gave the plaintiff regular Tylenol rather than Tylenol 3. However, the plaintiff specifically stated at his deposition that he was given Tylenol 3. A party may not create an issue of fact by contradicting previous depositions or other sworn testimony. *See, e.g., Ineichen v. Ameritech,* 410 F.3d 956, 963 (7th Cir.2005).

As also noted above, the plaintiff is diabetic. Throughout his confinement at the Joliet TDF, the plaintiff received insulin shots twice a day for his diabetes. (*Id.,* p. 154.)On multiple occasions, however, the plaintiff refused his insulin shots. (*Id.*) The plaintiff refused the shots whenever, he says, he saw the nursing staff engage in unsanitary practices (nose-picking, bottom-scratching, failing to done gloves).(*Id.*) The plaintiff additionally objected to the institution's policy of dispensing room-temperature, already-filled, unsealed syringes, rather than his being permitted to witness the needles being unwrapped from their packages, and the insulin being taken from a refrigeration unit and drawn into the syringe. (*Id.,* p. 156.)

**\*6** The plaintiff also received daily medicine cups with pills for unspecified conditions. (*Id.*) Once, a nurse (not a defendant) dropped a pill on the floor and then picked it up and attempted to give it to the plaintiff anyway. (*Id.,* p. 146.)The plaintiff refused to take the pill despite the nurse's coaxing that it was "nothing but a little dirt." (*Id.).* There were no other instances of medication being dropped on the

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

ground and then being given to the plaintiff. (*Id.,* p. 146-47.)

The plaintiff has never seen a syringe used on a resident and then re-used on another resident at the Joliet TDF. (*Id.,* p. 149 .)

No doctor ever told the plaintiff that the stomach ailment might have been caused by the failure of the nursing staff to wear gloves while dispensing medication. (*Id.,* p. 151.)

On an unspecified date, defendant Coleman issued the plaintiff a disciplinary report for allegedly engaging in "aggressive conduct." (*Id.,* p. 166.)Although the plaintiff denies that he acted aggressively, he concedes that he became upset with Coleman and raised his voice. (*Id.,* pp. 166-67.)While there is no record of the disciplinary report, (*id.,* pp. 168-69,) the plaintiff recalls that he was restricted to his unit for seven days as a result of the report. (Complaint, p. 11.)

*Facts Relating to Defendant Monahan*

The plaintiff is suing Thomas Monahan solely on the basis that Monahan was the Joliet TDF's facility director. (Exhibit B to Monahan's Motion for Summary Judgment, Deposition of Juan McGee, at p. 93.)The plaintiff believes, "As director of the facility, he's supposed to know everything. (*Id.,* p. 89.)"[I]f you a director that mean you have-you have to have personal knowledge of everything that goes on."(*Id.,* p. 93.)Monahan did not participate in behavior management committee hearings; he simply signed off on incident reports. (*Id.,* pp. 108, 127.)Monahan never punished the plaintiff for reporting wrongful conduct on the part of a DHS employee. (*Id.,* p. 126.)Monahan never personally took any adverse action against the plaintiff.(*Id.,* p. 122.)

## III. ANALYSIS

### A. General Living Standards

The court has previously ruled that DHS officials were acting within their bounds in operating the Joliet TDF much like a prison; the court additionally upheld the preferential treatment of residents who refused to participate in the sex offender treatment program. *See* Memorandum Opinion and Order of September 14, 2007, at pp. 6-7.The Constitution required Defendants to house the plaintiff under "humane conditions" and to provide him with "adequate food, clothing, shelter, and medical care."*Sain v. Budz,* No. 05 C 6394, 2006 WL 539351, *2 (N.D. Mar. 3, 2006)* (Conlon, J.), *citing Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

Like a pretrial detainee, a sexually violent person may not be subjected to conditions that amount to "punishment" without due process. *See, e.g., Jones v. Blanas,* 393 F.3d 918, 932 (9th Cir.2004).*"Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish."*Youngberg v. Romeo,* 457 U.S. 307, 321-22, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982).*"[D]ue process requires that the conditions and duration of confinement ... bear some reasonable relation to the purpose for which persons are committed."*Seling v. Young,* 531 U.S. 250, 265, 121 S.Ct. 727, 148 L.Ed.2d 734 (2001); *West v. Schwebke,* 333 F.3d 745, 748 (7th Cir.2003).

*7 Detainees may nevertheless be subjected to conditions that advance goals such as preventing escape and assuring the safety of others, even though they may not technically be "punished." *Allison v. Snyder,* 332 F.3d 1076, 1079 (7th Cir.2003), *citing Allen v. Illinois,* 478 U.S. at 373-74 (1986).

Does placement in a prison, subject to the institution's usual rules of conduct, signify punishment? The answer, given by *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), is no. *Wolfish* held that pretrial detainees, who like civil committees may be held for security reasons but not punished, may be assigned to prisons and

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

covered by the usual institutional rules, which are designed to assure safety and security.

*Allison,* 332 F.3d at 1079.

## B. The Plaintiff's Conditions Claim Against Liberty HealthCare Corporation

No material facts are in dispute with respect to the plaintiff's allegations against Liberty Healthcare, and Liberty has established that it is entitled to judgment as a matter of law. Although the plaintiff sues Liberty in connection with the conditions of his confinement at the Joliet TDF, Liberty has demonstrated that its only role at the Joliet TDF was to provide sex offender treatment. Neither Liberty nor its employees operated or maintained the physical plant of the Joliet TDF. Furthermore, the plaintiff cannot attribute any alleged mistreatment or misconduct to any Liberty employee. No individuals employed by Liberty are named as defendants, and the plaintiff never complained to Liberty or its employees about his living conditions. Any problems associated with the plaintiff's conditions cannot be imputed to Liberty employees when an inspector and the U.S. Court of Appeals for this circuit specifically found that conditions at the Joliet TDF were not "objectively serious enough to establish a constitutional violation ."*Sain v. Wood,* 512 F.3d 886, 894 (7th Cir.2008).

Even if the conditions of the plaintiff's confinement did violate his constitutional rights, Liberty cannot be held vicariously liable under 42 U.S.C. § 1983. "It is well-established that there is no *respondeat superior* liability under § 1983."*Jackson v. Illinois Medi-Car, Inc.,* 300 F.3d 760, 766 (7th Cir.2002), citing *Horwitz v. Bd. of Educ.,* 260 F.3d 602, 619 (7th Cir.2001). A "private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights."*Ibid., quoting Iskander v. Vill. of Forest Park,* 690 F.2d 126, 128 (7th Cir.1982). In order to prevail against a corporate unit, the plaintiff must establish that he has suffered a constitutional deprivation proximately

caused by an express policy or widespread practice attributable to the corporate defendant. *Id.* In this case, even assuming (without finding) that the conditions of the plaintiff's confinement at the Joliet TDF violated his constitutional rights, Liberty cannot be held liable because the plaintiff has failed to show that its employees were responsible for, or deliberately indifferent to, those conditions. Accordingly, summary judgment is granted in favor of Liberty Healthcare Corporation.

## C. The Plaintiff's Bad Food Claim Against Aramark Correctional Services

**\*8** Although the plaintiff contends that the food Aramark served at the Joliet TDF was non-nutritious, non-diabetic, and sometimes even putrid, the record does not contain sufficient evidence for the matter to go before a jury. In denying Aramark's motion to dismiss the complaint for failure to state a claim, the court specifically noted, "In order to survive a motion for summary judgment, Plaintiff will have to prove his claims, of course."*See* Memorandum Opinion and Order entered September 14, 2007, at page 14. While the plaintiff's allegations were sufficient to withstand a motion to dismiss, he has not met his burden at the summary judgment stage of these proceedings.

As noted above, the Constitution required Defendants to house Plaintiff under "humane conditions" and to provide him with adequate food, among other staples. *Sain v. Budz,* No. 05 C 6394, 2006 WL 539351, \*2 (N.D. Mar. 3, 2006) (Conlon, J.), *citing Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). There is no question that inmates have a constitutional right to an adequate diet. *See, e.g., Antonelli v. Sheahan,* 81 F.3d 1422,1432 (7th Cir.1996)."The state must provide an inmate with a 'healthy, habitable environment.' This includes providing nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it."*French v. Owens,* 777 F.2d 1250, 1255 (7th

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Cir.1985) (citations omitted).

In the case at bar, the plaintiff's claims that his diet did not comport with diabetic guidelines or that it was otherwise nutritionally inadequate is wholly without foundation. Presumably, a dietician planned institutional meals to ensure that inmates' basic dietary needs were met. The plaintiff has cited no authority whatsoever to support his contention that the food was unhealthy, nor any medical or professional report calling into question the quality of the meals provided at the Joliet TDF. To the contrary, except for one, ten-day stomach ailment-the cause of which is unknown-the plaintiff admittedly never suffered any harm from the food during the ten months he spent at the Joliet TDF. The court has only the plaintiff's say-so that he was not served diabetic-appropriate meals.

There is no medical evidence that the plaintiff's single episode of stomach problems was related to food consumption. If the food were as bad as the plaintiff claims, surely he (and other detainees) would have become ill from the food time and again. In the absence of any detriment to the plaintiff's health or well-being, any drastic weight loss, or some other indicator that the food did not meet his basic needs, no reasonable trier of fact could conclude that the plaintiff did not receive a balanced diet, or that dietary deficiencies posed a serious risk to him.

Although the food may have been unpalatable or unappetizing, the Constitution provides only that inmates receive adequate nutrition; food that is not aesthetically pleasing or tasty does not violate an inmate's civil rights.*LeMaire v. Maass,* 2 F.3d 851, 861 (9th Cir.1993), *citing Cunningham v. Jones,* 567 F.2d 653, 659-60 (6th Cir.1977). Similarly, the fact that food was served cold does not implicate the Constitution. *See, e.g. Brown-el v. Delo,* 969 F.2d 644, 648 (8th Cir.1992) (prisoner's claim that constitutional rights were violated when he was served cold food was frivolous); *see also Madyun v. Thompson,* 657 F.2d 868, 874-75 (7th Cir.1981)."The Constitution does not require prison

officials to provide the equivalent of hotel accommodations."*Lunsford v. Bennett,* 17 F.3d 1574, 1579 (7th Cir.1994).

**\*9** It should additionally be noted that the plaintiff never put Aramark on notice that there were perceived problems with spoiled or non-nutritious food. The plaintiff concedes that he never wrote to Aramark or filed a grievance about the quality of the food. We know that the plaintiff was familiar with the grievance process because he filed a grievance concerning a missed meal.[FN4] In short, there is a dearth of evidence showing either that the food served at the Joliet TDF posed a substantial risk of serious harm, or that Aramark acted with deliberate indifference to a known risk. No outcome-dispositive facts are in dispute, and Aramark has established that it is entitled to judgment as a matter of law.

> FN4. The occasional missed meal does not rise to the level of a constitutional violation. *See, e.g., Curiel v. Stigler,* No. 06 C 5880, 2008 WL 904894, \*5 (N.D.Ill. Mar.31, 2008) (Zagel, J.), *citing Knox v. Wainscott,* No. 03 C 1429, 2003 WL 21148973, \*8 (N.D.Ill. May, 14, 2003) (Manning, J.) (citations omitted); *Cunningham v. Eyman,* No. 95 C 2900, 2000 WL 748098, \*6 (N.D.Ill. Jun.9, 2000) (Moran, J.).

**D. Plaintiff's Claims Against the "Health Care Defendants"**

*1. The Plaintiff's Medical Care*

The record does not support an inference that defendants Carol Vance, Jovita Anyanwu, Alice Coleman, or Addus Health Care, Inc., acted with deliberate indifference to the plaintiff's serious medical needs. Notwithstanding any minor problems, the plaintiff received regular care for his chronic health conditions, as well as treatment for his one, arguably serious outbreak of stomach illness. Even if the health care staff now and again failed to ob-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

serve some basic precautionary measures, there is no evidence that the plaintiff suffered any injury as a result of purportedly unsanitary practices. The plaintiff's subjective belief that poor practices may have adversely affected his health is wholly unsupported by the record.

Prison officials may not act with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Detainees awaiting trial are similarly afforded *Estelle*-like protection against medical mistreatment under the Due Process Clause. *Holmes v. Sheahan,* 930 F.2d 1196, 1199 (7th Cir.1991). "To cast this notion in the language of tort, the [State or] County has an affirmative duty to provide persons in its custody with a medical care system that meets minimal standards of adequacy." *Holmes,* 930 F.2d at 1199 (citations omitted). The subjective element of deliberate indifference encompasses conduct such as the refusal to treat a prisoner's chronic pain, *Jones v. Simek,* 193 F.3d 485, 490 (7th Cir.1999), the refusal to provide pain medication prescribed by doctor, *Ralston v. McGovern,* 167 F.3d 1160, 1162 (7th Cir.1999), or erroneous treatment based on a substantial departure from accepted medical judgment, practice, or standards. *Sherrod,* 223 F.3d at 611; *Vance v. Peters,* 97 F.3d 987, 992 (7th Cir.1996).

In denying the defendants' motion to dismiss the complaint for failure to state a claim, the court nevertheless noted that the plaintiff's claims were borderline and admonished him, "Again, in order to defeat a motion for summary judgment, Plaintiff will have to substantiate his claims, proving by a preponderance of the evidence that he was harmed by shoddy medical practices."(Memorandum Opinion and Order dated September 14, 2007, at p. 12-13.)The plaintiff has provided no such proof.

**\*10** The plaintiff cannot show that inadequate treatment exacerbated his diabetes or otherwise harmed him. It is undisputed that the plaintiff received insulin shots twice a day and oral medications once a day. There is no suggestion that the plaintiff

suffered a diabetic attack or a complication relating to any other chronic health condition while housed at the Joliet TDF.

Nor is there any competent evidence that the plaintiff's sole medical issue, a stomach ailment shortly after his arrival at the facility, was the result of substandard medical practices. During his deposition, and throughout his response to the health care defendants' statement of facts, the plaintiff asserts that he "speculates" or "suspects" that the lack of gloves led to his illness and that "there is always the possibility" of such a cause and effect. However, an opponent of summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Lorillard Tobacco Co., Inc. v. A & E Oil, Inc.,* 503 F.3d 588, 594-595 (7th Cir.2007), *quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (internal citations omitted). The plaintiff's theory that he became sick due to the lack of prophylactic gloves, without some foundation upon which to base that hypothesis, is too meager a possibility to survive summary judgment.

The care the plaintiff received when he became ill in November 2005 further weakens any deduction of deliberate indifference. There is no dispute that the plaintiff was seen by a doctor each time he filled out a health care request form, and he was given medication to combat both his symptoms and the associated pain.

The plaintiff was not constitutionally entitled to see syringes unwrapped, drawn, or disposed of in his presence; nor did he have a protected interest in having health care providers don gloves before handling his medications. Although universal safety

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

measures are strongly encouraged and might have given the plaintiff peace of mind, his subjective-and apparently unrealized-fears of contamination are not actionable under 42 U.S.C. § 1983.

Even assuming *arguendo* that the quality of the plaintiff's care was subpar, his inability to cite any harm defeats his claim. The plaintiff cannot recover damages for something that might have happened but did not. Even in constitutional torts, there is no tort without injury. *Janmark, Inc. v. Reidy,* 132 F.3d 1200, 1202 (7th Cir.1997); *Niehus v. Liberio,* 973 F.2d 526, 532 (7th Cir.1992) (collecting cases)." 'No harm, no foul' is a maxim of the law of torts (in legal rather than sports lingo: there is no tort without injury). This maxim is equally apt in administering the apparatus for seeking compensation after a tort." *Kanar v. U.S.,* 118 F.3d 527, 531 (7th Cir.1997)."[F]ailing to provide a maximally safe environment, one completely free from ... safety hazards is not [a form of cruel and unusual punishment]." *Carroll v. DeTella,* 255 F.3d 470, 472-73 (7th Cir.2000). In the absence of any alleged injury whatsoever, shortcomings on the part of the health care staff did not violate the plaintiff's constitutional rights.

**\*11** In short, while the court in no way condones some of the sloppy practices described by the plaintiff (handling meds after picking one's nose, offering pills that had been dropped on the floor, etc.), the plaintiff cannot obtain relief under 42 U.S.C. § 1983 because he cannot prove any actual harm. The plaintiff was entitled to constitutionally adequate care, *Johnson v. Doughty,* 433 F.3d 101, 1013 (7th Cir.2006), not "the best care possible." *Forbes v. Edgar,* 112 F.3d 262, 267 (7th Cir.1999.) The individual defendant health care providers did not provide such substandard medical attention as to violate the Fourteenth Amendment. Furthermore, because the plaintiff has no claim against the doctor and nurse named as defendants, he cannot prevail against either health care unit administrator Carol Vance or Addus Health Care, Inc ., on a basis of *respondeat superior.*

### 2. The Plaintiff's Retaliation Claim

The plaintiff's "retaliation" claim against defendant Coleman is equally unfounded. The plaintiff claims that on an unspecified date, Coleman wrote him a disciplinary report for objecting when she dropped a cotton ball on the floor and then attempted to use it on the plaintiff. It is well settled that prison officials violate the Constitution when they retaliate against a prisoner for filing grievances or initiating lawsuits. *Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Walker v. Thompson,* 288 F.3d 1005, 1009 (7th Cir.2002). However, in the case at bar, the plaintiff has not set forth a chronology of events from which retaliatory animus can be inferred.

The court questions whether a punishment of seven days' unit restriction implicates the Constitution. In *Sandin v. Connor,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court held that state-created liberty interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484. In *Thielman v. Leean,* 282 F.3d 478 (7th Cir.2002), the U.S. Court of Appeals for the Seventh Circuit applied *Sandin* to civilly detained individuals. The plaintiff's punishment strikes the court as *de minimis.*

In any case, the plaintiff has failed to demonstrate that a triable issue exists as to either his having engaged in protected activity, or that the disciplinary report was retaliatory in nature. First, there appears to be no record of any disciplinary report ever written by Coleman. (*See* Plaintiff's Depo., pp. 168-69.) Second, the plaintiff does not indicate that he had ever filed a grievance or lawsuit against Coleman prior to the alleged disciplinary action. The plaintiff has not articulated facts tending to show retaliation.

Third, the plaintiff's own deposition testimony be-

lies his contention that the conduct report was "false." The plaintiff acknowledges that he became upset with Coleman on the date in question and raised his voice to her, even though he himself does not characterize his demeanor as aggressive. (Plaintiff's Depo., pp. 166-67.) It is understandable that a nurse would have felt threatened by an angry felon; mouthing off is not a protected activity. The defendant has demonstrated that the plaintiff was punished for violating rules, not for engaging in protected conduct. The plaintiff's own testimony dooms his assertion that the disciplinary report was fabricated, whether or not it was entirely justified. The plaintiff has not made an arguable showing that protected activity was a substantial or motivating factor in his being disciplined.

**\*12** In sum, the health care provider defendants are entitled to judgment as a matter of law.

### E. Plaintiff's Claims Against Thomas Monahan

The plaintiff admits that he has named Monahan as a defendant only because Monahan was the Joliet TDF's facility director, and not because Monahan personally violated the plaintiff's constitutional rights. As discussed *supra,* liability under 42 U.S.C. § 1983 requires a defendant's direct, personal involvement. *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir.1995).Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation."*Pepper v. Village of Oak Park,* 430 F.3d 809, 810 (7th Cir.2005) (citations omitted). The doctrine of *respondeat superior* (blanket supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir.2001). To be held liable under 42 U.S.C. § 1983, supervisors "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference."*Id.*

The court denied Monahan's motion to dismiss because *Antonelli v. Sheahan,* 81 F.3d 1422 (7th Cir.1996), teaches that dismissal of a *pro se* complaint on grounds of lack of active personal involvement is inappropriate where the official's position justifies an inference that the official had some direct involvement in the alleged violation. In *Antonelli,* the Court of Appeals found that an inference of involvement was justified to sustain claims asserted against certain senior officials where the claims alleged "potentially systemic," rather than "clearly localized," constitutional violations. *Id.* at 1428-29.However, the more fully developed record demonstrates no widespread problems. Because the plaintiff has no viable claim against the individual health care, psychiatric care, and food providers, defendant Monahan necessarily cannot be held liable as supervisor. *See e.g., Johnson v. Snyder,* 444 F.3d 579, 586 (7th Cir.2006) (the fact that the plaintiff's medical needs were being addressed by the medical staff insulated the warden from liability).

The only broad issue raised in Count 2 that was not substantively addressed in the other defendants' summary judgment motions is the plaintiff's claim that he went without outdoor recreation for ninety days due to a series of disciplinary infractions. However, the plaintiff admits that: (a) he was given free range of his living unit even while on "closed management" status, and was not confined to his room; (b) he never attempted to do push-ups, sit-ups, or other exercise routines; and (c) his health did not deteriorate on account of being denied outdoor exercise.

There is no triable issue that the plaintiff's lack of outdoor exercise rose to the level of a constitutional deprivation. "Unless extreme and prolonged, lack of exercise is not equivalent to a medically threatening situation."*Harris v. Fleming,* 839 F.2d 1232, 1236 (7th Cir.1988) (confinement in segregation unit for four weeks). There is a significant difference between a lack of outdoor recreation and an inability to exercise. The plaintiff was perfectly

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

capable of improvising some kind of an exercise regimen in his room or living unit while on lockdown. Particularly where, as here, the plaintiff suffered no illness or injury, his protracted indoor confinement did not rise to the level of a constitutional violation. FN5

> FN5. The court has no occasion to consider whether the plaintiff's other complaints about his living conditions might state a cause of action against Monahan. The plaintiff specifically stated in his complaint (p. 8), as well as confirmed at his deposition (p. 90), that he was suing Monahan only in connection with Count II, relating to the plaintiff's medical care and alleged retaliation. In any event, Liberty's motion for summary judgment casts considerable doubt on the plaintiff's general conditions claims.

**F. Plaintiff's Challenge to His Pretrial Detention**

*13 Finally, it should be noted that the plaintiff devotes much ink in his briefs opposing summary judgment to the proposition that he should not be held in custody as a pretrial detainee. However, to the extent that the plaintiff challenges his pretrial confinement, he must file a petition for a writ of habeas corpus.

It is not proper for the plaintiff to raise new claims at the summary judgment stage of these proceedings. *See, e.g., Killis v. Medieval Knights, LLC,* No. 04 C 6297, 2007 WL 4302470, *3 (N.D.Ill.Dec.4, 2007) (Zagel, J.): "This liberal pleading standard does not imply that a plaintiff may raise wholly new claims at the summary judgment stage."Regardless, the court cannot grant habeas relief in the context of a civil rights action. *Rogers v. Illinois Dept. of Corrections Special Evaluation Unit,* 160 F.Supp.2d 972, 977-978 (N.D.Ill.2001) (Kennelly, J.) (the court was not permitted to convert a civil rights complaint filed by civilly detained civil rights plaintiffs into a habeas action). If the petitioner wishes to contest his pretrial deten-

tion, he may petition the court for a writ of habeas corpus, which is available to persons challenging unconstitutional civil confinement as well as penal incarceration. *Cain v. Ryan,* 171 F.Supp.2d 813, 823 (N.D.Ill.2001) (Gettleman, J.).

***CONCLUSION***

For all of the foregoing reasons, the defendants' respective motions for summary judgment are granted. The plaintiff has failed to show that there is a genuine issue as to any material facts, and the defendants have demonstrated that they are entitled to judgment as a matter of law. Even viewing the record in the light most favorable to the plaintiff, no reasonable person could find that he was denied adequate food or medical care, that he was the victim of retaliation, or that the conditions of his confinement at the Joliet TDF violated his constitutional rights.

IT IS THEREFORE ORDERED that Liberty Healthcare's motion for summary judgment (# 114) is granted.

IT IS FURTHER ORDERED that Aramark Correctional Services' motion for summary judgment (# 105) is granted.

IT IS FURTHER ORDERED that the Addus Health Care defendants' motion for summary judgment [# 85] is granted.

IT IS FURTHER ORDERED that Thomas Monahan's motion for summary judgment [# 109] is granted.

IT IS FURTHER ORDERED that the plaintiff's motion opposing summary judgment [# 125] is denied. The Clerk is directed to enter judgment in favor of all defendants pursuant to Fed.R.Civ.P. 56. The case is terminated.

N.D.Ill.,2008.
McGee v. Monahan
Slip Copy, 2008 WL 3849917 (N.D.Ill.)

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.